IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAMIE WAZELLE; TAY AUNG; ELIZABETH CASEL; MANIVANH CHANTHANAKHONE; MANUEL CONTRERAS; REBECA CORRAL; PATRICIA COSSEY; JOZETTE ESCOTO; CRUZ GARCIA, SR.; SHERYL GARDNER; DENETRIA GONZALEZ; RENE GUTIERREZ; BRIAN HALL; BRANDON IVORY; NINI AYE KAYAHPHU; KO LATT; ARMANDO LIRA; DERESTIA LIRA; MYA LIRA; VALARIE LIRA; AUNG MOE; BIAK MORRIS; MALEAK RECTOR; MARICELA RIOS; NATASHA RIOS; GUADALUPE RONDAN; MIGUEL RONDAN; JAVIER RUBIO; IGNACIO RUIZ; SYLVIA RUIZ; MITCHELL SANCHEZ; BILLY SHAW; KYAW SOE; NYEIN SOE; THIDA SOE; BREANA SOLIS; LADONNA TRULL; AND TIN SOE, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MAUNG MAUNG TAR, <br><br>   Plaintiffs, <br><br>vs. <br><br>TYSON FOODS, INC.; ERNESTO SANCHEZ; KEVIN KINIKIN; and FARREN FERNANDEZ, <br><br>   Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | NO. 2:20-cv-00203-Z |

**REPLY IN SUPPORT OF DEFENDANT TYSON FOODS, INC.'S
MOTION TO DISMISS**

Oral Argument Requested

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................ 1

    I.     Plaintiffs fail to plausibly allege causation. ............................................ 1

    II.    Plaintiffs' claims are preempted. ............................................................ 6

          A.     Plaintiffs mischaracterize the preemption provision. .................. 6

          B.     Plaintiffs' claims fail to account for the federal designation of Tyson as "critical infrastructure." ......................... 9

CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................... 2, 3, 6

*Bates v. Dow Agrosciences LLC,*
   544 U.S. 431 (2005) ..................................................................................................... 8, 9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................................................... 2

*Cary v. Hickenlooper,*
   673 F. App'x 870 (10th Cir. 2016) .................................................................................. 5

*Cipollone v. Liggett Group, Inc.,*
   505 U.S. 504 (1992) ..................................................................................................... 8, 9

*Cortez v. W. Mut. Ins. Co.,*
   5:19-CV-430-OLG, 2019 WL 10349397 (W.D. Tex. June 24, 2019) ....................... 4

*E. Air Lines, Inc. v. McDonnell Douglas Corp.,*
   532 F.2d 957 (5th Cir. 1976) ......................................................................................... 10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014) ........................................................................................... 3

*Fish v. Princess Cruise Lines Ltd.,*
   No. CV 20-3894 DSF (C.D. Cal. Aug. 21, 2020) ..................................................... 1, 4

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3rd Cir. 2009) ........................................................................................... 2

*Francis v. Giacomelli,*
   588 F.3d 186 (4th Cir. 2009) ........................................................................................... 2

*Nat'l Meat Ass'n v. Harris,*
   565 U.S. 452 (2012) ................................................................................................. 7, 8, 9

*Peterson v. Silverado Senior Living, Inc.,*
   790 F. App'x 614 (5th Cir. 2019) ................................................................................ 4, 5

*Riegel v. Medtronic, Inc.,*
   552 U.S. 312 (2008) .......................................................................................................... 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

CASES (CONT.)

*Rincon v. Covidien*,
  No. 16-CV-10033 (JMF), 2017 WL 2242969 (S.D.N.Y. May 22, 2017) .............. 5, 6

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ................................................................................................ 2

*Webb v. Livingston*,
  Civ. A. Nos. 6:13cv711, 6:13cv712, 6:14cv93, 2014 WL 11860703
  (E.D. Tex. May 5, 2014) ......................................................................................... 3

*West Virginia University Hospitals, Inc. v. Casey*,
  499 U.S. 83 (1991) ................................................................................................. 7

STATUTES

21 U.S.C. § 678 ............................................................................................................. 1, 6, 7

OTHER AUTHORITIES

9 C.F.R. § 416.5(c) ............................................................................................................... 8

85 Fed. Reg. 15,337 (Mar. 13, 2020) .................................................................................. 10

The complaint should be dismissed because it fails to plausibly allege that Tyson's alleged conduct caused Plaintiffs to contract COVID-19—and Plaintiffs' Response fails to cure that defect.

Plaintiffs do not identify any factual allegations in the complaint that plausibly allege causation. Instead, Plaintiffs point to material outside of the pleadings—implicitly acknowledging that the allegations of the complaint alone are insufficient to state a plausible claim. Moreover, the materials Plaintiffs rely upon do not relate specifically to Tyson, and in any event confirm the existence of alternative plausible sources of infection, such as congregate housing and community spread.

At least one federal district court recently dismissed a complaint brought by COVID-infected passengers of Princess Cruise Lines, holding that while the passengers "allege they 'contracted COVID-19 on Defendant's ship,' [the complaint] fails to contain sufficient allegations to plausibly support that conclusion." Order at 8, *Fish v. Princess Cruise Lines Ltd.*, No. CV 20-3894 DSF (JCx) (C.D. Cal. Aug. 21, 2020), ECF No. 26 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court should reach the same conclusion: the complaint fails to contain allegations to plausibly support causation, and should be dismissed.

In addition, the FMIA expressly preempts Plaintiffs' state-law tort claims because those claims would impose requirements regarding the "premises, facilities and operations" of a meat processing facility that are "in addition to, or different than those made under this chapter," 21 U.S.C. § 678, and should be dismissed on that basis as well.

## ARGUMENT

### I. Plaintiffs fail to plausibly allege causation.

The complaint fails to plausibly allege that Tyson's alleged conduct caused Plaintiffs to contract COVID-19. Plaintiffs' Response—which cites an incorrect pleading standard, fails to identify any factual allegations of causation, and relies on

material outside the pleadings that confirms the prevalence of alternative sources of infection—does nothing to cure that failure.

**Plaintiffs cite the wrong pleading standard.** Citing *Swierkiewicz v. Sorema N.A.*, Plaintiffs erroneously argue that a "liberal and simplified 'notice of pleading' standard" applies to the complaint. [Resp. at 4-5 (*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-15 (2002)] Not so. "The standard that the plaintiffs quoted from *Swierkiewicz* . . . was explicitly overruled in *Twombly*." *Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3rd Cir. 2009) (discussing the "demise of *Swierkiewicz*").

Instead, the Supreme Court's 2009 and 2007 rulings in *Iqbal* and *Twombly* clarify that federal pleading standards require a factual showing that creates "more than a sheer possibility" of a claim. *Iqbal*, 556 U.S. at 678. As Plaintiffs themselves concede, to "defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must 'nudge[] their claim across the line from conceivable to plausible' by pleading 'enough facts to state a claim to relief that is plausible on its face.'" [Resp. at 4 (citing *Webb v. Livingston*, Civ. A. Nos. 6:13cv711, 6:13cv712, 6:14cv93, 2014 WL 11860703, at *1 (E.D. Tex. May 5, 2014))]

**Plaintiffs fail to identify any factual allegations of causation.** Plaintiffs do not dispute that they must plead—and ultimately prove—that each Plaintiff contracted COVID-19 *from work* rather than elsewhere, and *due to Tyson's alleged negligence* rather than some other cause.

But Plaintiffs fail to identify any factual allegations that satisfy these requirements. Plaintiffs do not allege any particular incident of infection. Nor do Plaintiffs allege any mechanism of infection. Indeed, neither the complaint nor Plaintiffs' Response contain any factual allegations regarding when, where, why, or how any of the forty-one individual Plaintiffs were infected with COVID-19.

**Plaintiffs fail to rebut alternative sources of infection.** Nor do Plaintiffs allege any facts to rebut alternative sources of infection, as required under federal pleading standards. *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998-99 (9th Cir. 2014) (dismissal required where allegations are "consistent with both [the plaintiff's] theory of liability and [an] innocent alternative").

To the contrary, Plaintiffs' Response reinforces the existence of alternative sources of infection. Plaintiffs cite a CDC report (one not referenced in the complaint) that confirms that alternative sources such as "'shared transportation to and from the workplace, congregate housing, and frequent community contact with fellow workers' contributed to the spread and high rate of infection." [Resp. at 8] Far from supporting Plaintiffs' argument regarding the sufficiency of the complaint, that report underscores that Plaintiffs' allegations are "consistent with both [Plaintiffs'] theory of liability and [an] innocent alternative." *Eclectic Props.*, 751 F.3d at 998-99.

Indeed, with more than 6 million confirmed infections across the country, the likelihood of infection from community spread—which the CDC defines as individuals "who are not sure how or where they became infected"—is a matter of simple common sense. *See Iqbal*, 556 U.S. at 679 (court should use "judicial experience and common sense" when evaluating adequacy of allegations). COVID-19 is highly contagious. The large number of delayed onset and asymptomatic carriers makes tracking and contact tracing extremely difficult. Many cases are unreported, in part because millions of Americans have been unknowingly infected. And the effectiveness of protective measures is limited and uncertain.

Plaintiffs (at 7) dismiss these points as mere "jury arguments," but plausible factual allegations of causation to support a claim are a *pleading requirement*—and one that Plaintiffs have failed to satisfy. *Webb*, 2014 WL 11860703, at *1.

Plaintiffs also suggest that the complaint is adequate because "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." [Resp. at 6] But that argument puts the cart before the horse: "[T]he federal rules do not permit plaintiffs to conduct discovery on inadequately pled claims hoping to uncover a wrong for which plaintiff can be granted relief." *Cortez v. W. Mut. Ins. Co.*, 5:19-CV-430-OLG, 2019 WL 10349397, at *6 (W.D. Tex. June 24, 2019) (dismissing complaint).

**Plaintiffs fail to distinguish similar cases.** At least one federal district court recently dismissed a complaint brought by COVID-infected passengers of Princess Cruise Lines, holding that while the passengers "allege they 'contracted COVID-19 on Defendant's ship,' [the complaint] fails to contain sufficient allegations to plausibly support that conclusion." Order at 8, *Princess Cruise Lines*, No. CV 20-3894 DSF (JCx), ECF No. 26 (citing *Iqbal*, 556 U.S. at 678).

Moreover, Plaintiffs fail to plausibly distinguish *Peterson*, *Cary*, and *Rincon*—all cases where courts concluded on broadly similar facts that causation could not plausibly be assumed:

- ***Peterson v. Silverado Senior Living, Inc.***, 790 F. App'x 614 (5th Cir. 2019).
  - Plaintiffs argue that *Peterson* was different because "the plaintiffs alleged that Seroquel was a dangerous drug that *might* cause pneumonia and could *possibly* lead to death." [Resp. at 9]
  - But that is exactly the situation here. Plaintiffs' Response concedes that factors such as "'shared transportation to and from the workplace, congregate housing, and frequent community contact with fellow workers' contributed to the spread and high rate of infection." [Resp. at 8 (citing CDC report)]

-4-

- The holding in *Peterson* is therefore directly on point: "Even accepting the alleged facts as true, the Peterson's second amended complaint is insufficient to support a plausible inference that Silverado's actions were more likely than not the cause of Ruby's death" because, *e.g.*, "we are being asked first to agree that, of all possible causes, Seroquel caused Ruby's pneumonia." *Peterson*, 790 F. App'x at 617.
- ***Cary v. Hickenlooper***, 673 F. App'x 870 (10th Cir. 2016)
  - Plaintiffs argue that "*Cary* is distinguishable because the evidence there showed that although the inmate was exposed to uranium, the exposure was limited and could not have caused the illnesses of which the inmate complained." [Resp. at 9-10]
  - But that is not correct. *Cary* was decided on the pleadings, not "evidence," and those pleadings were strikingly similar to this case: "He alleges that he 'has been, and is continuing to be, exposed to a wide variety of waterborne toxicological hazards which have already negatively affected his health and rendered him permanently disabled.'" 673 F. App'x at 875.
  - The court dismissed the complaint not because of any "evidentiary" finding, but because—like the complaint here—the plaintiff made "only conclusory assertions that these conditions are the result of exposure to toxic water at SCF" and "fail[ed] to present any specific facts to show that his exposure to minimally elevated levels of uranium or other toxins at SCF has caused or exacerbated these problems." *Id.*
- ***Rincon v. Covidien***, No. 16-CV-10033 (JMF), 2017 WL 2242969 (S.D.N.Y. May 22, 2017)
  - Plaintiffs attempt to distinguish *Rincon* on the ground that "in light of the time between the original surgery and the infection, there were other plausible explanations for the woman's condition that were more likely," whereas here "the cause—or

> - in other words, the place of exposure—of Plaintiffs' COVID-19 infections can be linked to Plaintiffs' employment at Tyson." [Resp. at 10]
> - But Plaintiffs "distinction" is circular: Plaintiffs simply assume that their "infections can be linked to Plaintiffs' employment at Tyson," but federal pleading standards require that Plaintiffs allege facts to support that assumption—which they have not.
> - The court's holding in *Rincon* is therefore directly on point. "Ignoring conclusory assertions and the recitation of legal standards, however, Rincon fails to allege any facts that plausibly establish . . . causation. . . . Nothing in the Amended Complaint even endeavors to explain why the [defendant's alleged negligence] is a more likely, let alone proximate, cause of Rincon's alleged harms." 2017 WL 2242969, at *1.

Similar to these cases, no inference of causation or wrongdoing is warranted from the allegation that Plaintiffs became ill with COVID-19. The fact that Plaintiffs contracted a highly contagious disease during a global pandemic does not raise any suggestion that Tyson, or anyone else, was negligent.

More than conclusory allegations are required to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The complaint fails to meet this standard, and should be dismissed.

## II.     Plaintiffs' claims are preempted.

### A.     Plaintiffs mischaracterize the preemption provision.

The FMIA expressly preempts Plaintiffs' state-law tort claims because those claims would impose "[r]equirements within the scope of this chapter with respect to premises, facilities and operations" of a meat processing facility "in addition to, or different than those made under this chapter." 21 U.S.C. § 678.

Plaintiffs assert that their claims are not preempted "based on a plain reading of the FMIA," but Plaintiffs' Response inexplicably ignores the actual text of the

FMIA. [Resp. at 11-12] Plaintiffs instead rely on dicta from the Supreme Court's decision in *Harris* generally describing the FMIA, and, based on that, Plaintiffs assert that the "FMIA expressly preempts states from regulating 'the inspection, handling, and slaughter of livestock for human consumption.'" [*Id.* at 12 (quoting *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012)]

In fact, as explained in *Harris*, the "FMIA contains an express preemption provision," which states:

> Requirements within the scope of this [chapter] with respect to **premises, facilities and operations** of any establishment at which inspection is provided under [subchapter I of this chapter], which are in addition to, or different than those made under this [chapter] may not be imposed by any State.

*Harris*, 565 U.S. at 458 (quoting 21 U.S.C. § 678) (emphasis added). Contrary to Plaintiffs' assertion (at 12) that the preemption provision's scope is "limited," the plain language of the provision demonstrates that it broadly preempts any requirement within the FMIA's "scope" related to meat-processing "premises, facilities and operations." *Harris* also made clear that the FMIA's "scope" is "broad" and that the "FMIA's preemption clause sweeps widely." *Harris*, 565 U.S. at 455, 459.

Rather than address the actual terms of the FMIA's "premises, facilities and operations" preemption provision, Plaintiffs gesture vaguely to the "specific purpose . . . of the FMIA." [Resp. at 15] But the "best evidence of congressional purpose is the statutory text," *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 84 (1991), which here states that state requirements concerning meat processing facilities' premises, facilities and operations are preempted if they fall "within the scope" of the FMIA, 21 U.S.C. § 678. As the Supreme Court explained in interpreting this provision, the "within the scope" limitation is satisfied if the Department of Agriculture "could issue regulations under the FMIA" imposing the

-7-

same requirements sought to be imposed under state law. *Harris*, 565 U.S. at 466. The Department of Agriculture plainly could have imposed the same legal duties that form the basis for Plaintiffs' state-law tort claims because the Department *has already adopted* detailed regulations governing employee disease at meat processing facilities. *See* Mot. 18-19; *see also, e.g.*, 9 C.F.R. § 416.5(c) ("Disease control. Any person who has or appears to have an infectious disease . . . must be excluded from any operations which could result in product adulteration and the creation of insanitary conditions until the condition is corrected.").

Indeed, Plaintiffs do not dispute (or even acknowledge) that the Department of Agriculture has already regulated sanitation, employee infectious disease, and personal protective equipment under the FMIA, which is sufficient to demonstrate that requirements concerning those practices—including those bearing on employee diseases—fall "within the scope" of the statute. [*See* Resp. at 11-16; Mot. 18-19]

**State tort claims are also preempted.** Plaintiffs contend that this Court should reject preemption here because the FMIA supposedly does not preempt "state law tort claims" involving alleged "personal injur[ies]." [Resp. at 12] The controlling precedents on this issue are the Supreme Court's decisions in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), and *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992). In each of those cases, the Supreme Court "held that a provision pre-empting state 'requirements' pre-empted common-law duties." *Riegel*, 552 U.S. at 324 (discussing *Bates*, 544 U.S. at 443, and *Cipollone*, 505 U.S. at 521 (plurality op.), 548-49 (Scalia, J., concurring in relevant part)). And contrary to Plaintiffs' suggestion that the FMIA's preemption of state-law "requirements" has no bearing on tort claims, each of these cases applied the preemption statutes at issue to claims akin to those asserted here—even though the claims were based on "general common-law duties." *Riegel*, 552 U.S. at 327 ("negligence, strict-liability, and implied-warranty claims" for personal injuries); *see*

*also Bates*, 544 U.S. at 446 ("fraud and negligent-failure-to-warn claims" for property damage); *Cipollone*, 505 U.S. at 528 (personal injury claims based on "failure-to-warn theory").

To be sure, this does not mean that the FMIA's preemption provision forecloses all—or even most—common-law claims brought by employees at meat processing facilities. The preemption provision is limited to requirements "within the scope" of the FMIA, and workplace safety issues will "usually" fall outside that scope because they do not *also* pose a risk to food safety. *Harris*, 565 U.S. at 467 n.10. In this case, however, Plaintiffs' claims arise from a global disease pandemic and involve the steps that Tyson took or allegedly should have taken to prevent the spread of disease among employees in its meat processing facility. Employee disease at meat processing facilities implicates food safety, which is precisely why the Department of Agriculture has regulated in this area. Plaintiffs' claims would impose state-law "[r]equirements" governing Tyson's "premises, facilities and operations" that—in this specific context—fall "within the scope" of the FMIA. Those claims are therefore preempted.

      **B.**      **Plaintiffs' claims fail to account for the federal designation of Tyson as "critical infrastructure."**

Plaintiffs contend that the designation of food companies as critical infrastructure is irrelevant because President Trump's April 28, 2020 executive order supposedly "neither mandated nor forgave Tyson's conduct that is at issue in this suit," and in any event that they were exposed to COVID-19 "weeks before the April 28 order." [Resp. at 17] This argument, however, ignores that the President's *Food Supply Chain Resources* order simply formalized earlier federal directives to Tyson.

Tyson operated its facilities—including the Amarillo facility—as critical infrastructure pursuant to emergency plans resulting from Presidential Policy

Directive 21 of the Obama Administration.[1] The plans were designed "to protect against a disruption anywhere in the food system that would pose a serious threat to public health, safety, welfare, or to the national economy,"[2] and they were triggered by President Trump's declaration of a national emergency effective on March 1, *see* Exec. Office of Pres., *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020).

Consistent with these long-standing plans, the President declared on March 13 that employees in "critical infrastructure industr[ies]" have a "special responsibility" and directed those employees and their employers to "follow CDC guidance to protect [their] health at work." Exec. Office of Pres., *The President's Coronavirus Guidelines for America*, Mar. 16, 2020, at 2[3]. These directions were binding on Tyson even if they were informally presented; as the Fifth Circuit has recognized, the President's "broad authority" under the Defense Production Act can be exercised through either "formal, published regulations" or "informal and indirect methods of securing compliance." *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 992-93 (5th Cir. 1976) (holding that federal officers invoked their authority with a defense contractor through "jawboning" as opposed to formal orders like the April 28 order here). Any state-law duties that would impose different requirements on Tyson's operations, like Plaintiffs' claims here, are accordingly preempted.

## CONCLUSION

Pleading standards require that a lawsuit allege facts that "state a claim to relief that is plausible on its face." The complaint does not satisfy that standard. Tyson respectfully requests the complaint be dismissed.

---

[1] https://obamawhitehouse.archives.gov/the-press-office/2013/02/12/presidential-policy-directive-critical-infrastructure-security-and-resil.
[2] https://www.cisa.gov/sites/default/files/publications/nipp-ssp-food-ag-2015-508.pdf.
[3] https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

Dated:  October 8, 2020                                  Respectfully submitted,


   */s/ Kelly Utsinger*
Kelly Utsinger
Texas Bar No. 20416500
**UNDERWOOD LAW FIRM, P.C.**
500 S. Taylor, Suite 1200
Amarillo, Texas 79101
Telephone:  806.376.5613
Facsimile:   806.379.0316
Kelly.Utsinger@uwlaw.com

Christopher S. Coleman
**PERKINS COIE LLP**
Admitted *Pro Hac Vice*
2901 North Central Avenue
Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  602.351.8000
Facsimile:   602.648.700
CColeman@perkinscoie.com

Mary Z. Gaston
**PERKINS COIE LLP**
Admitted *Pro Hac Vice*
1201 Third Avenue. Suite 4900
Seattle, Washington 98101
Telephone:  206.359.8000
Facsimile:   206.359.9000
MGaston@perkinscoie.com

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

This is to certify that, on October 8, 2020, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system as follows:

| | |
|---|---|
| Kurt Arnold | Tim Newsom |
| Caj Boatright | **YOUNG & NEWSOM, PC** |
| Roland Christensen | 1001 S. Harrison |
| Joseph McGowin | Suite 200 |
| Claire Traver | Amarillo, Texas 79101 |
| 6009 Memorial Drive | tim@youngfirm.com |
| Houston, Texas 77007 | |
| karnold@arnolditkin.com | |
| cboatright@arnolditkin.com | |
| rchristensen@arnolditkin.com | |
| jmcgowin@arnolditkin.com | |
| ctraver@arnolditkin.com | |
| kbateam@arnolditin.com | |
| e-service@arnolditkin.com | |

**ATTORNEYS FOR PLAINTIFFS**

                                                /s/ *Kelly Utsinger*