IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| JAMIE WAZELLE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:20-CV-203-Z |
| | § | |
| TYSON FOODS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand ("Motion") (ECF No. 13). For the reasons stated below, Plaintiffs' Motion is **DENIED**.

### BACKGROUND

Plaintiffs were employees of Defendant Tyson Foods' meat-packing plant located in Amarillo, TX during the first half of 2020. ECF No. 1-14 ("First Amended Petition") at 9. As the COVID-19 pandemic swept across the United States, many states, including Texas, began to implement precautionary measures to slow the spread of the virus. *Id.* Effective April 2, 2020, Texas Governor Greg Abbott issued a stay-at-home order, but Plaintiffs allege they were required to continue to work at Tyson Foods' meatpacking plant. *Id.*

While working at the plant, Plaintiffs allege that they were exposed to and contracted COVID-19 — both before and after Governor Abbott's order. *Id* at 10. Asserting claims for negligence, gross negligence, and wrongful death, Plaintiffs brought suit in Texas state court naming Ernesto Sanchez, Kevin Kinikin, and Farren Fernandez as defendants. ECF No. 1-3 at 9. Plaintiffs alleged these individuals "failed to fulfill their job duties to provide a safe working

environment to Plaintiffs." *Id.* Plaintiffs later amended their state petition to include Tyson Foods as a Defendant. First Amended Petition at 8.

On August 28, 2020, Defendants timely removed the case to this Court under 28 U.S.C. § 1442(a)(1). ECF No. 1 at 4. On September 25, 2020, Plaintiffs filed their Motion to remand this case back to the 251st District Court, Potter County. ECF No. 13.

**LEGAL STANDARDS**

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Lavery v. Barr,* 943 F.3d 272, 275 (5th Cir. 2019) (internal quotations omitted). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. And Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000)).

The federal officer removal statute, however, must be liberally interpreted because of its broad language and unique purpose. *Watson v. Philip Morris Companies, Inc.,* 551 U.S. 142, 147 (2007). The statute provides, in relevant part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity *for or relating to* any act under color of such office...

28 U.S.C. § 1442(a)(1) (emphasis added).

While courts are to interpret this statute liberally, the removing defendant still bears the burden of establishing a basis for federal jurisdiction. *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397 (5th Cir. 1998). In light of the 2011 Congressional Amendment to section

2

1442(a), the Fifth Circuit articulated a four-part test to determine whether federal officer removal is justified: (1) the party has asserted a colorable federal defense; (2) the party is a "person" within the meaning of the statute; (3) the party has acted pursuant to a federal officer's directions; (4) and the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

ANALYSIS

The Court finds Defendants have carried their burden to establish jurisdiction under the federal officer removal statute.

**A. Defendants have asserted a colorable federal defense.**

The well-pleaded complaint rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). Consequently, the well-pleaded complaint rule usually bars defendants from removing to federal court when the only jurisdictional hook is a federal defense. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

But the federal officer removal statute is an exception. It permits an officer to remove a case even if no federal question is raised so long as the officer asserts a federal defense. *Latiolais*, 951 F.3d at 290. The asserted defense need not even be clearly sustainable. *Id.* at 297. Instead, "an asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Id.* "Certainly, if a defense is plausible, it is colorable." *Id.*

In their notice of removal, Defendants raised two federal defenses. ECF No. 1 at 10–11. First, they argue that the Federal Meat Inspection Act (FMIA) expressly preempts plaintiffs' state-law claims. *Id.* at 10. Second, the Defendants claim that there is conflict preemption between

3

Plaintiffs' claims and President Trump's April 28 Executive Order paired with the Defense Production Act. *Id.* at 10–11.

The Federal Meat Inspection Act "regulates a broad range of activities at slaughterhouses to ensure the safety of meat and the humane handling of animals." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012). The FMIA contains an express preemption provision which reads:

> "Requirements *within the scope* of this [Act] with respect to *premises, facilities and operations* of any establishment at which inspection is provided under . . . this [Act], which are *in addition to, or different* than those made under this [Act] may not be imposed by any State."

21 U.S.C. § 678 (emphasis added).

In the Plaintiffs' view, the FMIA only expressly preempts state laws covering the inspection, handling, and slaughter of livestock for human consumption, so their common-law tort and wrongful death claims are not preempted. ECF No. 13 at 15.

Defendants emphasize the first portion of the provision, which prohibits state-law requirements "with respect to premises, facilities and operations." Defendants also stress the Supreme Court has ruled that the Federal Meat Inspection Act's preemption clause "sweeps widely." *Nat'l Meat Ass'n*, 565 U.S. at 459.

In sum, Plaintiffs frame this case as a workplace safety issue that is not preempted by FMIA. Defendants frame this case as being about "sanitary conditions" and "disease control" which could be pre-empted by the FMIA. *See, e.g.*, 9 C.F.R. §§ 416.5(b)-(c), 416.2(b).

Preliminarily, the Court takes note that the Supreme Court has held "that state laws of general application (workplace safety regulations, building codes, etc.) will *usually* apply to slaughterhouses." *Id.* at 467 n. 10 (emphasis added). The word "usually" implies that *sometimes* the FMIA *does* preempt state workplace safety regulations.

This case is not a typical workplace injury case such as a slip and fall that falls outside of the scope of the FMIA's preemption provision. *See, e.g.* ECF No. 15 at 13–14 (collecting workplace-safety cases against Tyson Foods that proceeded in state court). Instead, this case arose in the unique context of a global pandemic. Workplace conditions and procedures related to disease prevention implicate food safety, which could bring Plaintiffs' claims under the ambit of the FMIA.

At this stage, the Court finds, without expressing any opinion on the merits, that preemption under the Federal Meat Inspection Act is plausible. And, as the Fifth Circuit has held, if the defense is plausible, it is colorable. *Latiolais*, 951 F.3d at 297. Accordingly, Defendants have satisfied the first prong of the *Latiolais* requirements.[1]

### B. Defendants are "persons" within the meaning required in Section 1442.

The parties do not dispute that Defendants satisfy the second prong of the *Latiolais* test. Section 1442(a)(1) applies to "private persons," *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014) (quoting *Watson*, 551 U.S. at 143). And it applies to corporations. *Latiolais*, 951 F.3d at 291.

### C. Defendants acted under a federal officer's directions.

Defendants must establish they were *acting under* the directions of a federal officer to satisfy the third prong under *Latiolais*. 28 U.S.C. § 1442(a)(1); *Latiolais*, 951 F.3d at 296.

Under section 1442(a)(1), a "private person's acting under must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. "Although the words 'acting under' are undoubtedly broad, the Supreme Court has clarified that they must refer to a relationship that involves acting in a certain capacity, considered in relation to one

---

[1] Because the Court holds that Defendants have a colorable defense under the FMIA, the Court does not address Defendants' second argument regarding conflict preemption with President Trump's Executive Order. The Court notes, however, that the Executive Order was issued *after* the primary allegations in the First Amended Petition.

5

holding a superior position or office." *Zeringue v. Crane Company*, 846 F.3d 785, 792 (5th Cir. 2017).

Defendants point to two possible sources of direction from a federal officer: Tyson Foods' designation as "critical infrastructure" and President Trump's April 28, 2020 Executive Order. ECF No. 20 at 10–12.[2]

Defendants argue they were acting under a federal officer's directions because Tyson Foods was designated as "critical infrastructure" by the federal government. The Patriot Act empowers the federal government to designate particular industries as "critical infrastructure," meaning that "their incapacitation or destruction would have a debilitating effect on security, national economic security, national public health or safety, or any combination thereof." ECF No. 20 at 5.

On March 13, 2020, Tyson Foods, along with other components of the Food and Agriculture Sector, was designated as critical infrastructure in response to the COVID-19 pandemic. *Id.* at 6; Exec. Office of Pres., *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337, 15,337 (Mar. 13, 2020).

After this designation, Tyson Foods interacted with multiple government agencies and was "in close contact with officials at the U.S. Department of Homeland Security and the U.S. Department of Agriculture regarding continued operations." ECF No. 20 at 11. On March 15, just two days after the declaration of a national emergency, Tyson Foods also participated in a meeting between President Trump and other food industry executives "to discuss the stability of the supply chain." *Id.*

---

[2] Because the Court holds that Defendants were acting under the direction of a federal officer because of Defendants' "critical infrastructure" designation, the Court does not address Defendants' second argument regarding President Trump's Executive Order. Moreover, the Court notes the Executive Order was issued *after* the primary allegations in the First Amended Petition. *See supra*, fn 1.

In the following days, Tyson Foods began working directly with the United States Food Safety and Inspection Service (FSIS). *Id.* at 7. Tyson Foods communicated informally[3] but regularly with FSIS Administrator Paul Kiecker. *Id.* FSIS had employees staffed onsite at meatpacking plants — including those operated by Tyson Foods — to ensure that they maintained operations. *Id.* Moreover, "Congress allocated additional funding [to FSIS], precisely for the purpose of continued operations under federal oversight." *Id.* at 12. Finally, Tyson Foods worked with both the Department of Agriculture and the Federal Emergency Management Agency to receive personal protective equipment for its employees. *Id* at 7.

Plaintiffs contend that the critical-infrastructure designation is insufficient to conclude that defendants were "acting under" the directions of a federal officer Plaintiffs specifically cite to *Watson v. Phillip Morris*, where the Supreme Court held that private entities that are merely subject to government regulation cannot remove under the federal officer removal statute. 551 U.S. at 152 ("In our view, the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law."). Plaintiffs aver that Defendants' evidence only proves "they communicated with federal regulators and that Tyson Foods was subject to federal regulation." ECF No. 25 at 7.

But unlike *Watson*, Defendants here exhibited "an effort to help assist, or carry out, the duties and tasks of the federal superior." *Watson*, 551 U.S. at 152. Defendants did so by working

---

[3] To the extent some of the federal direction may have been more "informal," including emails, phone calls, and weekly meetings with FSIS and other federal officials regarding how to maintain operations safely, that informality does not change the fact that Defendants were still receiving and following federal direction. "It was recognized that, for reasons of practical necessity, urgently needed government orders had to be obtained '"by non-mandatory directions based ultimately on the powers of compulsion rather than by the actual exercise of the statutory compulsive powers."' *E. Air Lines, Inc. v. McDonnel Douglas Corp.*, 532 F.29 957, 993 (5th Cir. 1976) (quoting Dodd, *Impossibility of Performance of Contracts Due to War-Time Regulations*, 32 HARV. L. REV. 789, 798 (1919)). Although the President did not invoke the Defense Production Act until April 28, 2020, the President's authority under the DPA and Tyson Foods' earlier designation as critical infrastructure gave greater weight to the informal communications during the early and rapidly developing days of the COVID-19 pandemic. *Id.* at 998. ("[A] cumbersome and inflexible administrative process is antithetical to the pressing necessities.").

directly with the Department of Agriculture and the FSIS to guarantee that there was an adequate food supply. ECF No. 20 at 7. ("On March 16, 2020, the Department of Agriculture issued a statement that it was committed to the 'timely delivery of services to maintain the movement of America's food supply from farm to fork," and that it was "prepared to *utilize their authority and all administrative means and flexibilities* to address staffing considerations.") (emphasis added). Both the Department of Agriculture and the FSIS closely monitored Tyson Food's meatpacking plants, staffing some employees onsite during the pandemic. Congress even allocated additional funding to FSIS to ensure that they had the resources to adequately supervise meatpacking plants like the one at issue in this case.

Accordingly, the Court finds Defendants were "acting under" the directions of federal officials when the federal government announced a national emergency on March 13, 2021 and designated Tyson Foods as "critical infrastructure."

### D. The charged conduct is connected or associated with an act pursuant to a federal officer's directions.

Finally, Defendants must show a connection or association between the federal officer's directions and Plaintiffs' claims. *Latiolais*, 951 F.3d at 296.

Plaintiffs assert that there must be a "causal nexus" between the Plaintiffs' claims and the directions that the Defendants received from a federal officer. *See* ECF No. 13 at 11–12. Plaintiffs rely on *Winters v. Diamond Shamrock Chemical Company*, 149 F.3d 387 (5th Cir. 1998). The *Winters* standard no longer governs.

The Fifth Circuit in *Latiolais* elucidated the correct standard after the 2011 Congressional Amendment to 28 U.S.C. § 1442(a), changing the word "for" to the phrase "for *or relating to.*" *Latiolais*, 951 F.3d at 292. The *Latiolais* court held that the 2011 revisions "broadened federal officer removal to actions, not just causally connected, but alternatively *connected* or *associated*,

8

with acts under color of federal office." *Id.* at 292 (emphasis added). Under this more relaxed standard, the Court finds Defendants have satisfied their burden.

Plaintiffs allege that Defendants failed to create an adequately safe working environment during the COVID-19 pandemic by not providing personal protective equipment or implementing social-distancing measures. First Amended Petition 9–10. According to the Plaintiffs, the lack of personal protective equipment and social distancing measures led to their contraction of COVID-19. *Id.* at 11.

As explained above, Tyson Foods acted under the color of federal authority by maintaining operations during the pandemic to ensure the stability of the national food supply. Logically, the choice of what safety precautions should be taken — such as whether personal protective equipment should be provided or what social-distancing measures should be adopted — is connected to the broader decision to keep the plant operating during the pandemic. Thus, the final prong of the *Latiolais* standard is met.[4]

CONCLUSION

For the reasons set forth above, Defendants have met the standards of the federal officer removal statute. Plaintiffs' Motion to Remand is **DENIED**.

**SO ORDERED.**

June 25, 2021.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[4] Because defendants have established federal jurisdiction under the federal officer removal statute, it is not necessary to determine whether there is federal question jurisdiction as well. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).